

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-16-751

| | |
|---|---|
| | **Opinion Delivered** January 18, 2017 |
| MONTANA GUTHREY<br><br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION |
| V. | [NO. 60JV-14-1676] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | HONORABLE PATRICIA ANN JAMES, JUDGE |
| | REVERSED |

## LARRY D. VAUGHT, Judge

Appellant Montana Guthrey appeals the Pulaski County Circuit Court's order terminating her parental rights to her four minor children. Guthrey challenges the sufficiency of the evidence supporting the circuit court's findings as to the statutory grounds for termination and as to the children's best interest. We agree that the evidence was legally insufficient to support the circuit court's findings, and we therefore reverse.

Montana Guthrey's four young children were removed from her custody and placed in the care of the Arkansas Department of Human Services (DHS) in December 2014, following Guthrey's arrest as the result of a traffic stop during which police found drugs and drug paraphernalia in a car driven by Guthrey's boyfriend, Kirk Childers, and in which Guthrey and two of her children were passengers. Guthrey told the police that she and her four children lived with her brother and sister-in-law. Upon investigation as to whether the home was an

SLIP OPINION

appropriate place for the children to remain while Guthrey was incarcerated, Guthrey's sister-in-law failed a drug test, and all four children were taken into DHS custody.

On February 18, 2015, the circuit court adjudicated Guthrey's four children dependent-neglected based on a stipulation of parental unfitness and neglect because Guthrey had been arrested and had tested positive for benzodiazepines and PCP at the time of her arrest. The case goal was set as reunification and the case was placed in the court's "Zero to Three" program that allowed for more frequent review hearings and additional services. During several subsequent Zero to Three review hearings, the court noted Guthrey's progress in working the case plan. By March 11, 2015, she had successfully completed her psychological evaluation and was granted additional visitation with her children. In April, the court stated that Guthrey was compliant with the case plan and was "making great progress." In June, Guthrey was compliant and was receiving outpatient drug treatment and counseling, was attending AA/NA support group meetings, had passed all drug screens, had maintained a clean and appropriate home, and was abiding by all court orders. However, the June order noted that "there have been some bumps in the road" without specifying the problems.

One of those "bumps in the road" may have been a reference to the fact that Guthrey was pregnant, which was first noted by the court the following month in the July review order. The court stated that it would give her "one more [Zero to Three] review, with the caveat that reunification may not remain the goal" and stated that "if today were permanency planning, there is no doubt what the next hearing would be." The court stated that Guthrey had "squandered seven months" of the case and that her priority had not been her children. The court expressed disapproval of her pregnancy, stating, "[Guthrey] cannot handle the four

children she has, and she is adding another child into this mix with a father who will be in prison," referring to Kirk Childers. The court admonished Guthrey, stating that "[m]en [are] the worst choice this court repeatedly sees; they are always the same man in a different skin, and they are never appropriate and never stick around."

At the August hearing, the court entered an order stating that Guthrey had "done a lot of positive things on her drug treatment," but that she had more work to do. The court explained that it was willing to give Guthrey additional time and support at the upcoming permanency-planning hearing. It also modified the visitation schedule to allow for biweekly home visits, including Saturday visits of up to five hours. As part of this order, the court stated that "there shall be no men in her home; no one but family . . . shall be in the home for visits."

In November, the court held a permanency-planning hearing at which Guthrey's caseworker praised the progress she had made in overcoming her drug addiction. The court's permanency-planning order required Guthrey to continue working the case plan and receiving services, but it changed the case goal from reunification to termination and adoption. Again, the court recognized that Guthrey had maintained stable and appropriate housing and employment, had completed most services, had not tested positive for any drugs, had consistent visits with her children, and had gotten her driver's license reinstated. Her caseworker requested that the court give her three more months to work toward reunification and expressed the opinion that the children were ready to be reunified with their mother.

The evidence also revealed that Guthrey was in a new relationship with a disabled veteran she had met in AA/NA who was also a recovering alcoholic. She had ended her relationship with Kirk Childers when he went to prison, Mr. Childers had voluntarily

relinquished his parental rights to their child, and he was no longer a part of her life. She admitted that the man she was now seeing had been in her home during the pendency of the case, noting one evening she had friends over for a game night and he had come to get a lawnmower. However, there was evidence that his car had been seen at Guthrey's home late into the night when no one else was there. This was when the children were not present, and Guthrey stated that he had never been around her children and would not be around them if they were returned to her.

Guthrey also testified that, as part of her twelve-step program, she was working on improving her "character defects," and she listed honesty as something her sponsor was helping her work on. She admitted that, approximately a year prior, when she first began working the case plan, she had falsely stated that she was regularly attending AA/NA meetings that she was not attending. She said that she was "still continuing my rehab" at the time. She also acknowledged that, although she had been ordered to attend three AA/NA meetings per week, there had been a time during the course of the case that she could manage to attend only one per week, due to working two jobs and completing all other court-ordered services. Finally, she acknowledged that the results of her psychological evaluation indicated that she needed to address "decision making" and "poor choices," which she agreed had been a problem in her life, specifically noting her drug use with Kirk Childers. She stated that she had recently restarted individual therapy on her own accord.

Guthrey testified that she was working two jobs while also completing all of the required services and therapies for the case plan. She stated that her father-in-law had helped her pay rent for a few months and acknowledged that at one point there had been an eviction

notice against her, which she claimed was due to missing a deadline for re-signing her lease when her apartment was sold. She testified that she had maintained a stable, appropriate home and that it was fully ready for the return of her children.

Despite the caseworker's praise and request for more time, the court found that Guthrey's significant progress was not enough to forestall termination proceedings. The court stated that it had concerns about Guthrey's honesty, finding that she had been "evasive" throughout the case. The court stated that "mother is addicted to bad men" and "being addicted to men is just as bad as being addicted to drugs."

In January 2016, DHS and the attorney ad litem filed joint petitions to terminate Guthrey's parental rights. The evidence at the termination hearing was essentially the same as at the permanency-planning hearing: Guthrey had complied with the case plan and had successfully completed drug treatment as well as all other court-ordered services and therapies. She had given birth during the case to a fifth child whose father, Kirk Childers, was incarcerated. She had begun dating a recovering alcoholic. He had been in her home, even late into the night, but never when the children were present. She had maintained appropriate employment and housing and had frequently and successfully exercised visitation with the children.

The court entered an order terminating Guthrey's parental rights on June 9, 2016, finding that termination was in the children's best interest because returning them to her care would expose them to a risk of harm based on her poor judgment and inability to keep them safe. It also found three statutory grounds for termination: failure to remedy, subsequent factors, and aggravated circumstances. Guthrey filed a timely notice of appeal.

SLIP OPINION

In *Knuckles v. Arkansas Department of Human Services*, we explained that we review termination-of-parental-rights cases de novo. 2015 Ark. App. 463, at 2–3, 469 S.W.3d 377, 378–79 (citing *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001)). However, we reverse a trial court's decision to terminate parental rights only when it is clearly erroneous. *Ullom v. Ark. Dep't of Human Servs.*, 340 Ark. 615, 12 S.W.3d 204 (2000); *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, 430 S.W.3d 851; *Brewer v. Ark. Dep't of Human Servs.*, 71 Ark. App. 364, 43 S.W.3d 196 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a distinct and firm conviction that a mistake was made. *Wade v. Ark. Dep't of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999); *Hopkins v. Ark. Dep't of Human Servs.*, 79 Ark. App. 1, 83 S.W.3d 418 (2002).

Guthrey challenges the sufficiency of the court's evidence as to each statutory ground and the best-interest finding. Arkansas law provides, as one of the statutory grounds for termination, that the "juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent." Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) (Repl. 2015). Despite conceding that Guthrey had fully remedied her drug problems, the court found that she had not remedied the "poor judgment" that originally caused the removal of her children. On appeal, Guthrey argues that (1) the court erred in framing the original cause of removal so broadly and (2) there was insufficient evidence to support the court's finding of poor judgment.

SLIP OPINION

We agree that the court erroneously defined the condition causing removal of Guthrey's children as "poor judgment." It is clear from the court's previous orders that the children were removed from Guthrey's custody due to parental unfitness and neglect stemming from her arrest pursuant to the traffic stop during which drugs and drug paraphernalia were found in the car in which she and her children were passengers. Upon arrest, she tested positive for illegal drugs, and it was revealed that she and her children had been living in a home with other drug users. These facts were the bases for the stipulation of unfitness and neglect that resulted in her children's adjudication as dependent-neglected. Every alleged fault, error, or failure in Guthrey's parenting was directly related to the use of illegal drugs. By framing the condition causing removal so broadly as "poor judgment," the court violated the statutory requirement that this ground be focused on the specific conditions that caused removal. As a result, it rendered the alleged "condition" so vague as to be essentially meaningless.

Alternatively, we agree with Guthrey's argument that there was insufficient evidence to support the court's finding that she had failed to remedy her "poor judgment." In support of this finding, the court relied on Guthrey's relationships with "inappropriate" men and her evasiveness throughout the case. As to Guthrey's romantic relationships, she acknowledged that her relationship with Childers involved drug use and that he had been in and out of prison, qualifying him as an "inappropriate" man, but Guthrey testified that she had ended that relationship and that Childers was no longer a part of her life. There was no evidence in the record to contradict these statements. The court also found Guthrey's new romantic interest to be inappropriate simply because he was a fellow recovering addict whom she had met in

AA/NA. Dr. Deyoub opined that he could potentially pose a risk to the children if he relapsed. However, we note that such a statement is pure speculation, and the record reveals a complete lack of evidence to support the conclusion that this man had in any way been a negative influence on Guthrey or presented a risk to her children. Guthrey's own testimony revealed that he had supported her efforts to maintain sobriety, which the court had found her to have successfully achieved.

The only other finding relied on by the court to justify its finding that Guthrey had failed to remedy her "poor judgment" was the fact that she had been evasive and less than honest throughout the case. The termination order does not clearly specify particular instances of dishonesty, but it seems to include the fact that she was evasive about her romantic relationships and her pregnancy, she had exaggerated her financial stability and downplayed her struggles to pay rent, and she had provided assurances that her criminal charges were being resolved when in fact they remained pending. We respect and give deference to the court's determination that Guthrey was not credible. *Lowder v. Gregory*, 2014 Ark. App. 704, at 14, 451 S.W.3d 220, 229. However, even when we defer to the court's finding that Guthrey lacks credibility and disregard her own self-serving testimony, we are left with insufficient evidence to support the court's findings. We note that lack of credibility is not, in and of itself, a condition warranting removal of one's children and therefore does not amount to the failure to remedy such a condition. As we stated in *Geren-Williams v. Geren*, 2015 Ark. App. 197, at 9, 458 S.W.3d 759, 766, which hinged on whether there had been a material change of circumstance warranting a modification of child custody, "a credibility determination, on its own, does not create a material change in circumstances. Credibility describes a quality of the

witness (the quality of being believable or trustworthy, not an independent fact or circumstance)." We went on to say, "[s]tated more plainly, we defer to a circuit court's credibility determinations, but those determinations must relate to testimony or evidence regarding material facts" in order to support the circuit court's findings. *Geren-Williams*, 2015 Ark. App. 197, at 15–16, 458 S.W.3d at 769. As in *Geren-Williams*, we hold that the circuit court erroneously substituted its credibility determination for substantive evidence sufficient to support its finding.

The circuit court relied on the same analysis to support its finding of two other statutory grounds and best interest. For each, it repeatedly framed Guthrey's parenting problems as "poor judgment" manifested through dishonesty and relationships with inappropriate men.[1] As discussed above, there was insufficient evidence to support each finding.

Regarding the existence of subsequent factors, the court noted that Guthrey had become pregnant during the case but did not provide any analysis as to why her pregnancy met the statutory requirement that the subsequent factor "demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare." Ark. Code Ann. § 9-27-341(b)(3)(B)(vii). There is simply no evidence in the record to indicate

---

[1]In this case, it was also logically inconsistent for the court to have relied on the exact same facts for both its "failure to remedy" and "other subsequent factors" findings. The problems either caused the children's removal or they arose subsequent to removal, but not both. This demonstrates the error of framing the condition or subsequent factor as broadly as "poor judgment," because such a vague umbrella term would encompass all of a parent's shortcomings.

that the birth of Guthrey's baby would create any risk to her other children's health, safety, or welfare.

Likewise, the court's findings were insufficient to support a finding that Guthrey subjected the children to aggravated circumstances, which are defined by the statute as including "little likelihood that services to the family will result in successful reunification." Ark. Code Ann. § 9-27-341(b)(3)(B)*(ix)(a)(3)(B)(i)*. Far from demonstrating an inability or indifference to remedying her problems, Guthrey had diligently and successfully worked her case plan and utilized all available services. We find insufficient evidence to support the court's finding of aggravated circumstances.

Finally, the court relied on the same findings to support its conclusion that termination of Guthrey's parental rights was in her children's best interest because returning them to her custody would expose them to a risk of harm. The juvenile code requires termination to be supported by clear and convincing evidence that returning a child to his parent would place the child at risk, "specifically addressing the effect on the health and safety of the child." Ark. Code Ann. § 9-27-341(b)(3)(A)*(ii)*. As we have discussed above, there is insufficient evidence that returning the children to Guthrey would pose any risk to their health and safety. By all accounts, she successfully remedied her drug problems, diligently completed all required services and therapies, maintained stable and appropriate housing and employment, and successfully exercised extended visitation with her children. Her caseworker testified that her children love her and were ready to go home. Given these facts and the lack of evidence to support the court's concerns, we hold that there was insufficient evidence to support the court's best-interest finding.

Reversed.

GLADWIN and HARRISON, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellant.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.