In the order resulting from that permanency-planning hearing, the trial court found the following:
As to Ryan Bryant, he has again shown himself to be untrustworthy. The Court has made specific findings in the past that Mr. Bryant is not credible. The Court again today makes a specific finding that Mr. Ryan Bryant is not a credible individual and the Court can put very little weight in Mr. Bryant's testimony. This is a serious, substantial issue. The Court cannot trust what Mr. Bryant says.
To cite a specific example, Mr. Bryant was not honest about his living arrangements. The Court referred to its notes from February 21, 2017, and Mr. Bryant today directly contradicted the testimony given then. This is a material misrepresentation that involves several major issues concerning his house and others living in the home as well as the true nature of his relationship with those persons in the home and where he wants to have the child [Z.B.] placed.
He previously testified that the house he was in was leased to him, in his name, and his girlfriend was living with him in his home. The home study of that home, accepted into evidence today, revealed that the home was not leased to him but rather to the woman he claimed was his girlfriend, who is now no longer his girlfriend. Further, she said it was her intention to have him move from the home.
It is also notable that all of this information was gathered from her, not him; he was not forthcoming about any of these issues. Apparently, he would *300 have allowed his misrepresentations to stand.
As it turns out, he is now staying with someone else, has placed his belongings in storage, and says he is moving into a new apartment tomorrow, which will necessitate the third home study the Department will have to undertake on Mr. Bryant's behalf.
The Court cannot place a child in a home if material issues about the home are being lied about. When confronted with his previous contradictory testimony, Mr. Bryant continued to lie. This is only the most recent example of Mr. Bryant's lack of credibility.
Further, Mr. Bryant admitted today that the juvenile [Z.B.], while in his care, did see Annette Hughes, despite the Court's clear order of No Contact. Mr. Bryant claims this was inadvertent and was merely happenstance. The Court does not believe Mr. Bryant's assertion that this was just a coincidence.
Mr. Bryant cannot be believed, as the Court continues to find. Mr. Bryant has shown he cannot be trusted. Ms. Hughes is a toxic individual. Any contact with her carries a high likelihood of negative consequences and the Court could not have been any more clear at the termination of parental rights hearing that No Contact with Ms. Hughes should be allowed by anyone.
Yet, here we are and the Court is asked to accept that contact occurred but should be excused and overlooked as mere chance. The Court can't overlook it and certainly won't excuse it. This contact occurred on Mr. Bryant's watch and represents another major issue, this one going directly to the child's immediate well-being. Mr. Bryant has allowed the toxic Ms. Hughes access to [Z.B.] and that's a fact and the Court believes he would allow it again.
This, combined with his lack of trustworthiness, places him in an almost insurmountable position to regain his child; certainly, not in any reasonable period of time. This case is already two years old.
The Court is changing [Z.B.'s] goal to adoption and is setting the next hearing as a termination of parental rights hearing for Mr. Bryant. Termination is not a foregone conclusion and the Department shall continue to offer services to Mr. Bryant in the interim. He may have supervised visits at DHS and the Department shall conduct a home study on the new apartment once Mr. Bryant has moved in and stated his intent to reside there for the foreseeable future.
DHS filed a third petition to terminate parental rights on July 11, 2017. As to appellant, DHS alleged several grounds for termination under Arkansas Code Annotated section 9-27-341(b)(3)(B) (Supp. 2017), including the failure-to-remedy, subsequent-factors, and aggravated-circumstances grounds, and a termination hearing was held on September 15, 2017.
At the termination hearing, Jessica Warren, an adoption specialist, testified that it was her opinion that Z.B. was adoptable and that it would be in Z.B.'s best interest to be adopted.
Danielle Kimbrough testified that she supervised the family-services worker who was currently assigned to the case, Alexandria Forte, and Forte's predecessor, Kawachii Williams. Kimbrough explained that Bryant had exercised visitation throughout the case but missed some visits due to work schedules.
Alexandria Forte testified regarding the case history and explained that she thought it was in Z.B.'s best interest to gain some type of stability and permanency *301 as the case had been open for over two years. She explained that there were safety concerns with placing Z.B. in appellant's care as she did not know if appellant would continue to allow Z.B. to see Hughes if that was done. She noted that the court had already found Hughes to be toxic and an unfit parent. DHS was unable to conduct a trial placement during the pendency of the case due to the concern about the previous home study and then the allegations, which were later found to be true, that appellant was allowing Z.B. to see Hughes during unsupervised visitations. Therefore, Forte opined, there had been little progress made. On cross-examination, Forte admitted that appellant's most recent home study was favorable and that appellant was employed. Forte explained that there were three bedrooms in the new home and that appellant had told her only one other person was living in the home. However, she had not seen the lease.
Appellant testified that he had been living in his most recent home for approximately three months and that he has other children. Appellant admitted that another child, whom he thought was his son, had been adjudicated dependent-neglected after the child was removed from his mother's care. Appellant explained that he was not present at the time of the injury, but he was told that the child had been burned in a bathtub. After DNA testing, it was discovered that appellant is not that child's biological father.
Appellant testified that he was employed as a restaurant manager and that he was currently leasing his home. He denied that the encounter between Z.B. and Hughes was planned and stated that the encounter lasted no more than a couple of seconds.
After the hearing, the trial court terminated appellant's parental rights. In the termination order, the trial court found by clear and convincing evidence that it was in the child's best interest to terminate appellant's parental rights. It stated that it considered the likelihood that the child would be adopted and the potential harm to the child's health and safety by returning the child to appellant. As to appellant, the trial court found that DHS had proved by clear and convincing evidence the three grounds alleged in the petition for termination of parental rights, including the failure-to-remedy, subsequent-factors, and aggravated-circumstances grounds under Arkansas Code Annotated section 9-27-341(b)(3)(B). After detailing the case history, the trial court additionally made the following pertinent findings:
7. The Court finds the first ground pled in the Petition to have been proven by clear and convincing evidence against Mr. Bryant. The child was removed from the mother's custody on May 20, 2015; the child had never been in Mr. Bryant's custody and was not at the time of removal. The length of time that has passed since that removal is now just over twenty-eight (28) months, a period of time clearly exceeding the twelve month statutory requirement. The child has remained out of the non-custodial, Mr. Bryant's, home for a period exceeding twelve months.
Mr. Bryant, as the non-custodial parent, has not been rehabilitated nor have the conditions in the home been corrected despite the Department's meaningful efforts. The Department did make meaningful efforts and the ordered services were provided, although a delay as to parent-child specific counseling did occur; however, the Court allowed Mr. Bryant additional time and the Department did provide the counseling in question. Nevertheless, Mr. Bryant has not satisfied the Court as to his fitness and ability to parent and willingness to protect *302 the child. This is addressed multiple times throughout this order and the Court won't belabor the point here. He has not been and is not a fit and appropriate caregiver and he has not remedied this lack of fitness and impropriety during the time allowed under the statute. More than ample time was allowed. The statute contemplates one year with a three-month extension for a total of fifteen months; this case has been open almost double that at twenty-eight (28) months.
The Court finds the second ground pled to have been proven by clear and convincing evidence against Mr. Bryant for the extensive reasons cited above. Subsequent factors arose that demonstrate, despite a meaningful offer of appropriate services, an incapacity or indifference to remedy the reasons preventing placement of the juvenile with him in his custody.
The Court explained, at some length, that this case, in the final analysis, is not about a home study or counseling or even visitation. The services ordered were provided and completed, though delays did occur. To the extent that the delays were caused by the Department of Human Services, particularly the parent-child counseling last spring, the Court allowed Mr. Bryant additional time to comply and demonstrate his fitness to the court. Regarding [Z.B.], the Court did not terminate Mr. Bryant's parental rights last February. Mr. Bryant was afforded additional time to counter service delays caused by the Department and the services were completed. This additional time also revealed several material deceptions attempted by Mr. Bryant.
These ongoing credibility concerns trouble the Court greatly today and have throughout these proceedings. The Court has made specific findings regarding Mr. Bryant's credibility going back as far as the Adjudication on July 14, 2015, over two years ago, and has made additional rulings to that effect throughout these proceedings.
The passage of time has not allayed those concerns. Rather, those concerns have grown, including again today and the Court is again making a specific finding that Mr. Bryant is not credible. He attempted today to mislead the Court about an already settled matter, his housing and relationship status, from the previous hearing. This represents a lie on top of a lie. Mr. Bryant cannot be trusted to tell the truth to the Court and this has been proven repeatedly and likewise, he cannot be trusted to safely and responsibly parent and most importantly, protect the child.
The third ground pled has also been proven by clear and convincing evidence and is applicable to Mr. Bryant, per the Court's fact-finding and reasoning above. Such aggravated circumstances are present today and have been most recently in this matter. Additionally, the Court previously made an aggravated circumstances finding against Mr. Bryant once before, at the July 24, 2015, Adjudication in this matter. The Court finds it is unlikely that further services to this father will result in successful reunification as measured from the child's perspective and consistent with the child's developmental needs.
As noted above, Mr. Bryant is not trustworthy and this presents a fatal flaw to the Court. His lack of credibility affects his fitness and it follows, by that analysis, he is unfit and well over two years of working with Mr. Bryant and services to Mr. Bryant have not resulted in reunification and it is not likely to ever occur.
*303 Looking back at the Court's ruling from February 21, 2017, the Court allowed unsupervised visits and cleared the way for placement of [Z.B.] with Mr. Bryant. Unfortunately, serious problems emerged almost immediately and the unsupervised visits had to be terminated, for safety reasons, and the placement in Mr. Bryant's home never occurred, because serious misrepresentations or lies about that home came to light. The Court provided Mr. Bryant the opportunity to have [Z.B.] placed in Mr. Bryant's home. This failure to achieve (re)unification lies with Mr. Bryant. There are no compelling reasons to continue reunification services for Mr. Bryant.
8. The Court finds by clear and convincing evidence that it is in the best interest of the juvenile to terminate parental rights. [Z.B.] is an adoptable child. In making this finding, the court specifically considered the likelihood that the juvenile will be adopted if the termination petition is granted, and cites specifically the testimony of Jessica Warren, Department of Human Services Adoption Specialist, who stated there are numerous families available that are a data match for the juvenile. It is highly likely this child will be adopted. There is greater stability and permanency for the juvenile to terminate parental rights and proceed toward adoption.
The Court finds there is potential harm to the health and safety of the juvenile that would be caused by placing the juvenile in the custody of the father. The Court has no doubt that Mr. Bryant would turn right around and allow the toxic, biological mother, Annette Hughes, access to the child. This is not mere conjecture or speculation on the Court's part; this has already happened, as the Court addressed extensively above in its May 30, 2017, Permanency Planning Order. Mr. Bryant knowingly defied a clear court order regarding the child, and such defiance places the child in immediate danger.
This flaunting of a court order that was made for the child's safety, in combination with Mr. Bryant's past and ongoing credibility issues with this court add up to an overall and utter lack of fitness to parent this child. The Court does not believe Mr. Bryant will protect this child. The Court has ample reason to believe he will NOT protect this child.
Additionally, there have been housing and relationship stability issues, both of which Mr. Bryant attempted to mislead the Court about. All told, Mr. Bryant poses ongoing and present risks to the child, if the child were to be placed to him.
9. As such, the Court grants the Petition of the Department of Human Services and hereby terminates all parental rights between Ryan Bryant and the juvenile in this matter: [Z.B.]
This appeal followed.
II. Standard of Review
A trial court's order terminating parental rights must be based upon findings proven by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. Posey v. Ark. Dep't of Health & Human Servs. , 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the trial court's ruling unless its findings are clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction *304 that a mistake has been made. Id. In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. Id.
In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. Reid v. Ark. Dep't of Human Servs. , 2011 Ark. 187, 380 S.W.3d 918.
III. Statutory Grounds
The trial court granted the termination petition based on three grounds: (1) the failure-to-remedy ground under Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)(b) ; (2) the subsequent-factors ground under Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)(a) ; and (3) the aggravated-circumstances ground under Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)(a) . Arkansas Code Annotated section 9-27-341(b)(3)(B) defines these grounds as follows:
(i)(b) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the home of the noncustodial parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that prevented the child from safely being placed in the parent's home, the conditions have not been remedied by the parent.
....
(vii)(a) That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.
....
(ix)(a) The parent is found by a court of competent jurisdiction, including the circuit court juvenile division, to:
....
(3)(A) Have subjected any juvenile to aggravated circumstances.
(B) "Aggravated circumstances" means:
(i) A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification[.]
Appellant argues that the trial court erred in terminating his parental rights because there was insufficient evidence to support the grounds asserted in the petition to terminate parental rights. We cannot agree. Regarding the aggravated-circumstances ground, appellant relies on *305 Guthrey v. Arkansas Department of Human Services , 2017 Ark. App. 19, 510 S.W.3d 793, in which we held that a lack of credibility, standing alone, is not a condition warranting removal of one's child. Appellant argues that he completed the services that were ordered and that the recent home study discussed at the termination hearing had been approved. Therefore, he argues that the trial court's findings constitute reversible error under Guthrey . However, this case is distinguishable from Guthrey . The trial court's credibility determinations there did not relate to the testimony or evidence regarding a material fact in order to support the trial court's findings. Id. Instead, the trial court erroneously substituted its credibility determination for substantive evidence sufficient to support its finding, which we held was reversible error. Id. ; see also Ewasiuk v. Ark. Dep't of Human Services , 2018 Ark. App. 59, 540 S.W.3d 318.
Here, the trial court relied on the testimony of multiple individuals and did not hinge its determination solely on a finding that appellant was not credible. Despite the trial court's no-contact order and two years of services provided by DHS, it was revealed at the final permanency-planning hearing that appellant had allowed Z.B. to have contact with his biological mother. Z.B. testified regarding this contact, and Z.B.'s foster mother testified that Z.B. was not only upset after the contact but was also instructed by appellant not to tell anyone about the contact. Although appellant described this contact as "inadvertent," the trial court was not required to believe this self-serving testimony. Ewasiuk, supra. Ultimately, appellant is asking this court to reweigh the evidence in his favor, which we decline to do. Id. The trial court specifically considered the evidence before it, including any compliance, and found that the evidence supported the statutory grounds for termination. On this record, we cannot hold that the trial court clearly erred in its aggravated-circumstances finding. Because only one ground is necessary to terminate appellant's parental rights, it is unnecessary for us to address appellant's remaining arguments regarding the other statutory grounds found by the trial court.
IV. Best Interest
Appellant lastly argues on appeal that there was insufficient evidence that termination was in the best interest of his child. He does not challenge that Z.B. would be adoptable. Instead, he alleges that the evidence failed to establish that he posed such a potential harm that would warrant terminating his parental rights. The trial court found that the potential-harm factor was satisfied because it had no doubt that appellant would again allow Z.B.'s "toxic" biological mother access to Z.B. Appellant argues that the court's finding is simply conjecture and speculative. We disagree.
In assessing the potential-harm factor, the court is not required to find that actual harm would ensue if the child were returned to the parent or to affirmatively identify a potential harm. Sharks v. Ark. Dep't of Human Servs. , 2016 Ark. App. 435, 502 S.W.3d 569. The potential-harm analysis is to be conducted in broad terms. Id. The intent of our termination statute is to provide permanency in a minor child's life in circumstances where returning the child to the family home is contrary to the child's health, safety, or welfare, and where the evidence demonstrates the return cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Miller v. Ark. Dep't of Human Servs. , 2017 Ark. App. 396, 525 S.W.3d 48. The child's need for permanency and stability may override the parent's request for additional time to improve *306 the parent's circumstances. Id. The issue is whether the parent has become a stable, safe parent able to care for the child. Id . Here, appellant had already allowed Z.B. to have contact with Hughes despite the trial court's clear no-contact order. Past actions of a parent over a meaningful period of time are good indicators of what the future may hold, and even full compliance with the case plan is not determinative. Id. ; Sharks, supra. Thus, appellant's behaviors over the course of the entire case as outlined above do not show enough stability to render the trial court's finding that appellant posed a risk of potential harm to Z.B. if Z.B. was returned to his custody clearly erroneous.
Affirmed.
Abramson and Virden, JJ., agree.