Cite as 2019 Ark. App. 439

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.**  CV-19-519

| | |
|---|---|
| | **Opinion Delivered:**  October 2, 2019 |
| BRITTANY RYNN MIGUES | |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION [NO. 60JV-18-40] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE PATRICIA JAMES, JUDGE |
| APPELLEES | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Brittany Migues appeals after the Pulaski County Circuit Court filed an order terminating her parental rights to A.T. (DOB 1-10-2017).[1]  Appellant argues on appeal that the evidence was insufficient to demonstrate that termination was in A.T.'s best interest when there were multiple available relatives and the Arkansas Department of Human Services (DHS) failed to fully explore relative placement in compliance with the concurrent goal of the case established by the trial court.  We affirm.

## I.  *Relevant Facts*

On January 12, 2018, DHS filed a petition for ex parte emergency custody and dependency-neglect of A.T.  In the affidavit attached to the petition, DHS stated that a seventy-two-hour hold was exercised over A.T. due to inadequate supervision,

---

[1]The trial court additionally terminated the parental rights of A.T.'s father, Brandon Taplin; however, he is not a party to this appeal.

environmental neglect, and inadequate shelter. Appellant had been homeless and lived in various shelters with A.T. After appellant was arrested on January 9, 2018, A.T. was left with another homeless friend who was unable to meet A.T.'s needs. The trial court granted the petition, finding that probable cause existed for the removal, and a probable-cause order was filed on January 17, 2018. Appellant was ordered to submit to random drug screens, complete a drug-and-alcohol assessment and follow any recommendations, complete a counseling assessment and follow any recommendations, submit to a psychological evaluation, successfully complete counseling if recommended, successfully complete parenting classes, and maintain stable housing and employment.

In the March 7, 2018 adjudication order, A.T. was found to be dependent-neglected as a result of neglect and parental unfitness in that appellant was in jail at the time of removal and her whereabouts were unknown at the time of the adjudication hearing. The goal of the case was set to reunification with a parent, and the dependency-neglect case proceeded in the normal course with further hearings.

At a July 9, 2018 review hearing, appellant testified that she had been incarcerated but had been released on January 30, 2018. She was on probation and was residing at Dorcas House. The DHS caseworker testified that the paternal great-grandmother and grandfather had been identified as potential relative-placement candidates but that they lived out of state, which required DHS to complete placement packets under the Interstate Compact on the Placement of Children (ICPC). Ark. Code Ann. § 9-29-201 to –301 (Repl. 2015). Appellant testified that she did not want A.T. placed out of state. In its order, the trial court noted that appellant was "finally getting started" with her compliance. It further changed

the goal of the case to reunification with a concurrent goal of relative placement. It ordered DHS to conduct home evaluations on any appropriate, willing relatives. The trial court further noted, "Mother is adamantly against out-of-state placement of the juvenile. Mother needs to get herself healthy and stable, or these out of state relatives will be considered for long-term placement."

A permanency-planning hearing was held on January 7, 2019. It was at this hearing that the trial court changed the goal to adoption. DHS's witness, Mary O'Connor, testified that A.T.'s paternal grandfather stated that he did not have stable placement for A.T. and that he no longer lived in the state where he had initially requested ICPC submission. Appellant had left Dorcas House, and both parents were incarcerated at the time of the hearing. The trial court found that DHS had made reasonable efforts to provide services and achieve the goal of the case. Finally, the trial court ordered DHS to "work on expedited ICPC referrals for any viable relatives that may exist. This was held up previously because of mother's adamancy that she wanted the child to remain in Arkansas at the last hearing."

At the termination hearing, Angela Brown testified that she is the adoption specialist assigned to this case. Ms. Brown testified that there were 378 matching families that would be interested in adopting A.T.

Brandon Taplin, A.T.'s father, testified that although he was incarcerated, either his grandmother, Adrianne Wilkerson, or father, Arthur Suggs, would be willing to take care of A.T.

Appellant also admitted that she was incarcerated at the time of the termination hearing and could not take care of A.T. but had hoped she would receive early parole

sometime later that April. She further testified that she had been in jail three times during the pendency of this case and admitted she had not fully complied with the case plan. She further admitted that she did not have any family members who would be willing to accept placement of A.T. Therefore, she requested an additional three months to show the trial court that she could gain stability and be in a position to take care of A.T. However, appellant stated that if the trial court would not return A.T. to her, then she was in favor of A.T.'s being placed with A.T.'s paternal grandfather.

Mary O'Connor, a family-service worker supervisor, testified regarding the factual history of the case as already outlined above. Ms. O'Connor testified that appellant had completed the drug-and-alcohol assessment, completed a psychological evaluation, received transportation services, attended parenting classes at the Dorcas House, and had some supervised visitation during the pendency of this case. As part of the drug-and-alcohol assessment, it was recommended that appellant attend twenty-seven group sessions and nine individual sessions; however, appellant failed to attend those sessions. Ms. O'Connor testified that A.T. was doing well in his foster home, and she recommended that appellant's parental rights be terminated.

Ms. O'Connor further testified that only two relatives had been located and contacted by DHS: Mr. Taplin's grandmother, Ms. Wilkerson, and his father, Mr. Suggs. She explained that both relatives moved around a lot. DHS had previously completed ICPC packets when Ms. Wilkerson had been living in North Carolina and Mr. Suggs had been living in Indiana. However, Ms. O'Connor stated that because appellant adamantly requested that A.T. remain in Arkansas to pursue reunification with her, the packets were

4

never mailed to the recipient states. Regardless, since that time, Mr. Suggs had recently moved to Illinois, and Ms. Wilkerson recently relocated back to Arkansas. Ms. O'Connor explained that she had spoken to Ms. Wilkerson about a month and a half before the termination hearing. At that time, Ms. Wilkerson indicated that she would be moving back to Arkansas but could not provide an address. Therefore, Ms. O'Connor told Ms. Wilkerson to call her back after the move when Ms. Wilkerson was ready to move forward with background checks and a home study, but Ms. Wilkerson failed to do so. Thus, no home studies had been completed for either relative.

Michelle Harper, the director of domestic violence at Dorcas House, testified that appellant was admitted into the program in approximately May 2018. However, appellant was asked to leave the program on August 20, 2018, because she would not comply with the program guidelines. Instead of doing her chores as required, appellant sought romantic relationships with other clients, brought up past traumatic events from her own past sexual interactions, and caused trauma to other clients in her room in contravention of program guidelines.

At the conclusion of the hearing, the trial court took the matter under advisement, and a written order terminating appellant's parental rights was filed on March 29, 2019. The trial court made the following pertinent findings:

> The Joint Petitioners have proven by clear and convincing evidence the following grounds relating to Mother set forth in its Petition.

> The Court finds by clear and convincing evidence, that the juvenile has been adjudicated by the Court to be dependent-neglected and has continued out of the home of the mother for twelve (12) months, and that despite meaningful effort by DHS to rehabilitate the mother and correct the conditions that caused removal, the conditions have not been remedied by Mother. The Court also finds by clear and

5

convincing evidence that the juvenile has lived outside the home of the mother for twelve (12) months, and the Mother has willfully failed to maintain meaningful contact with the juvenile. The Court finds by clear and convincing evidence that Mother has abandoned this juvenile. The Court further finds that other factors or issues arose subsequent to the filing of the original petition that demonstrate the placement of the juvenile in the custody of the Mother is contrary to the juvenile's health, safety, or welfare, and that despite the offer of appropriate family services, the Mother has manifested an incapacity or indifference to remedying those issues or factors, or rehabilitate her circumstances that prevent the placement of the juvenile in her custody. Finally, the Court finds by clear and convincing evidence that the Mother has subjected any juvenile to aggravated circumstances, specifically that there is little likelihood that services to the Mother will result in successful reunification.

7. The juvenile came into foster care on or about January 10, 2018, due to allegations of inadequate supervision and environmental neglect as both parents were allegedly homeless and were not staying in a shelter. Mother and Father were arrested after an altercation at UAMS and the child had no legal caregiver. An adjudication hearing was held in this matter on March 7, 2018, at which point the court found the child to be dependent-neglected based on parental unfitness by the mother due to an altercation with the child's Father that resulted in arrest for probation revocation. Father was also arrested at the same time for Domestic Battery 2nd.

8. Mother was offered appropriate services to address the instability that caused this case to open. Specifically, the Court ordered that the mother be provided with random drug screens, drug and alcohol assessment, counseling assessment, psychological evaluation, parenting classes, and other appropriate services. Mother did not do any services in the beginning of this case until she entered Dorcas House in May 2018. Mother completed parenting, psychological examination and her drug and alcohol assessment while she was living at Dorcas House. During that time, Mother appeared to be making progress under the stability offered at Dorcas House, and exercised regular visitation with the child. However, in August 2018, Mother was asked to leave Dorcas House for not following the rules. After leaving Dorcas House, Mother's participation in the case began to wane again. She did not follow up with ongoing counseling needs, did not follow the recommendations of her drug and alcohol assessment to attend group and individual meetings, and did not complete the recommendations of her psychological evaluation. Her visits with the child became sporadic and ended completely after October 9, 2018. Mother was arrested again sometime in October 2018. Mother has been incarcerated for almost half of the time that the child has been in foster care. Mother would appear for hearings when she is incarcerated, but she does not appear when she is not. Mother testified that she has not had stable employment or housing in the past three years, as her last stability was when she lived in Missouri; however, Mother could provide very little details as to the name of the employer or address of her home when she

6

lived there. Mother believes she will be released from prison at the end of April 2019 and would need some time in order to find a job and place for her and the child to live. Mother was offered services to remedy the causes of removal of the child from her care, but the Court finds that she has not done so. She has not provided little financial or emotional support for the child. She visited the child sporadically during the case. The Court therefore finds that the mother has willfully failed to maintain meaningful contact with the child, who has been out of her home for fourteen (14) months. Mother has not completed all of the services offered by DHS; and she has not completed any service while incarcerated. Mother has no home to which the child can return and Mother will continue to be incarcerated for at least another month. Her history of homelessness and lack of stability give very little assurance that she can obtain stability for the child once she is released. Mother has presented no information to the Court that she has benefitted from the short amount of counseling and domestic abuse treatment she received while at Dorcas House, nor has she meaningfully participated in any service designed to correct the conditions that caused removal of the child. Since the filing of the original petition in this matter, specifically since January 2018, Mother has shown a lack of regard for the child and this case, as referenced *supra*. The Court therefore finds that the mother is incapable or unwilling to remedy these subsequent factors and issues that prohibit the child from being placed in her custody.

9.    Based on the facts and findings outlined *supra*, along with the testimony presented at the termination hearing, the court finds by clear and convincing evidence that there is little likelihood that services to the Mother would result in successful reunification, which is also aggravated circumstances. Mother participated for a short time in services, but it appears she was unwilling or unable to abide by the rules of her probation, and as a result, continued to be incarcerated. Mother has not visited this child since October 2018, and her visitation was sporadic when she was not incarcerated. Mother has failed to provide reasonable support for the child or failed to maintain regular contact with the child, and based on the evidence presented, the Court finds that this failure is intended by the Mother to continue for an indefinite period into the future and is without just cause. This is abandonment. This Court finds there is no compelling reason to allow the mother additional time to work towards reunification when all prior services and cases have, to this point, proven absolutely futile. Further, to do so would be to require this child to languish needlessly in foster care in the hopes that Ms. Migues may finally attempt and maintain progress towards reunification when she has not been able to do so during the pendency of this case.

10.    This Court finds by clear and convincing evidence that it is in the child's best interests, and necessary to his health, safety and well-being, to terminate the parental rights of Brittany Migues to [A.T.], and hereby does so.

. . . .

14.     The Court finds that the mother and the father are not fit and proper parents.  The Court has no confidence that the mother or father could safely provide for this child and his needs.  This child needs a stable and safe environment with a parent who will ensure he receives appropriate care, supervision, and therapy as he grows.  Neither Ms. Migues nor Mr. Taplin is in a position to do so now or any time in the reasonable future when viewed from the child's perspective.  They have done very little for over a year in this matter or involving this child.  The Court finds that establishing a goal of placement with the mother or father, or continuing contact between Mother and the juvenile or Father and the juvenile, would result in harm to the child for the many reasons motioned *supra*.  This Court specifically finds that [A.T.'s] health and safety would be at risk if custody of him was ever returned to the mother or father, for the reasons listed *supra*.

. . . .

16.     The Department made reasonable and meaningful efforts to provide appropriate family services to the juvenile and the parents.  Both parents failed to take advantage of the services offered either by the Department or the ADC, and they failed to meaningfully participate in this case and their child's life.

17.     The Department has an appropriate plan for permanent placement for the juvenile, which is adoption.  Based upon the testimony offered, the juvenile is adoptable.  Angela Brown, adoption specialist, testified that there were three hundred and seventy-eight (378) matches for a child with characteristics such as those possessed by this child.  These characteristics include age, race, gender, and medical conditions.  The Court has taken adoptability into consideration in making its findings today.

18.     There are no appropriate relatives who are willing to take custody of this child.  Mr. Taplin provided the names of his father and his grandmother.  Both relatives lived out of state when initially contacted by the Department.  Mother was adamant at the Review Hearing that she did not want the child placed out of state.  After the Termination Hearing was set, the Department continued to have contact with the paternal great grandmother and paternal grandfather.  The paternal grandfather moved to Illinois, and no ICPC packet has been initiated due to his recent move.  Paternal Great Grandmother has recently relocated to Arkansas; however, she did not notify the Department of where she moved.  She did appear at the Courthouse today.  As of the date of this hearing, no relatives have completed any paperwork to pursue custody of this child.  No other relatives have come forward.

This appeal followed.

## II. *Standard of Review*

A trial court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2017). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Human Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination–of–parental–rights cases de novo but will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Human Servs.*, 2011 Ark. 187, 380 S.W.3d 918.

Appellant argues on appeal that the evidence was insufficient to demonstrate that termination was in A.T.'s best interest when there were multiple available relatives and DHS failed to fully explore relative placement in compliance with the concurrent goal of the case established by the trial court. She more specifically argues that it was in A.T.'s best interest for the trial court to grant her request for additional time before terminating her parental rights when DHS had failed to fully pursue finding a relative placement. Although she admits she did not have "model compliance," she alleges that she had nearly completed all services, had never harmed A.T., and had maintained a bond with her son. Granting the additional time "would have permitted a less restrictive alternative for permanency than that of termination[, allowing the issues relating to the relatives to be decided,] while preserving A.T.'s bond with his mother and ties to his extended family." Appellant does not otherwise challenge the sufficiency of the evidence supporting the grounds for termination, nor does she challenge the circuit court's findings regarding adoptability. Thus, we need not consider those issues. *Yarbrough v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 429, 501 S.W.3d 839.

Appellant's arguments on appeal are misplaced. Appellant analogizes the facts in this case to those in *Clark v. Arkansas Department of Human Services*, 2019 Ark. App. 223, 575 S.W.3d 578, in which we held that the trial court's decision to forgo a relative-placement option in favor of termination was clearly wrong under the circumstances. We disagree because the facts of *Clark* are distinguishable. The grandparents identified in *Clark* had a longstanding relationship with the minor children, and here, there is no indication that the paternal relatives have had any relationship with A.T. Even more importantly, the relatives

in question in *Clark* were the *appellant's* parents. Here, the relatives in question were paternal relatives; therefore, any rights and relationship of the paternal relatives were not derivative of appellant's relationship with A.T.

Each termination-of-parental-rights case is decided on a case-by-case basis, and *Clark* does not dictate a contrary result under the specific facts of this case. *Id.* The testimony presented to the trial court indicated that DHS had been in contact with both relatives. However, because both relatives moved around, a home study was never completed. In fact, according to the permanency-planning order, Mr. Suggs had indicated to DHS that he did not have stable placement for A.T. and that he no longer lived in the state where he had initially requested ICPC submission. Additionally, at the termination hearing, Ms. O'Connor testified that Mr. Suggs had recently moved to Illinois and that Ms. Wilkerson recently relocated back to Arkansas. However, Ms. Wilkerson had failed to contact DHS with her new address to move forward with a home study as Ms. O'Connor instructed. Moreover, it is clear from the record that *appellant* was the one who adamantly requested DHS and the trial court to not place A.T. with out-of-state relatives. Our supreme court has made it clear that "an appellant may not complain of an action of the trial court which he induced, consented to, or acquiesced." *Ponder v. Ark. Dep't of Human Servs.*, 2016 Ark. 261, at 5, 494 S.W.3d 426, 429 (quoting *Childers v. H. Louis Payne, D.C.*, 369 Ark. 201, 205, 252 S.W.3d 129, 132 (2007)); *Brown v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 104, 542 S.W.3d 899. Therefore, under these particular facts, we cannot say that the trial court's decision to forgo paternal-relative placement as a permanency strategy and terminate appellant's parental rights was clearly erroneous.

Finally, appellant's argument that termination was not in A.T.'s best interest because she had made progress with the case plan, had bonded with A.T., and "[n]o evidence was presented to demonstrate that an additional three months was contrary to A.T.'s best interest" lacks merit. The intent behind the termination–of–parental–rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Cobb v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 85, 512 S.W.3d 694. Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Bryant v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 375, 554 S.W.3d 295. Finally, a parent's past behavior is often a good indicator of future behavior. *Id.* Here, appellant's behaviors over the course of the entire case as outlined above do not show enough stability to render the trial court's best-interest finding clearly erroneous. As such, we affirm.

Affirmed.

KLAPPENBACH and BROWN, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.