Cite as 2022 Ark. App. 356

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV-22-163

|  |  |
|---|---|
|  | **Opinion Delivered** September 28, 2022 |
| SHEILA KING | APPEAL FROM THE SEBASTIAN |
| APPELLANT | COUNTY CIRCUIT COURT, FORT SMITH DISTRICT |
| V. | [NO. 66FJV-20-160] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE LEIGH ZUERKER, JUDGE |
| APPELLEES | AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

Sheila King appeals the termination of her parental rights to her three children. She asserts that the expert witness provided by the Arkansas Department of Human Services (DHS) did not provide the requisite testimony pursuant to the Indian Child Welfare Act (ICWA); that it was a conflict of interest for DHS to offer one of its own employees as the ICWA expert; and that the circuit court's failure to ensure compliance with ICWA has put the children's permanency at risk, rendering termination not in the children's best interest. We affirm.

On 23 April 2020, DHS petitioned for emergency custody of King's three adopted children: PK, age 15; JK, age 8; and RK, age 7.[1] The attached affidavit explained that DHS

---

[1] The children's adoptive father, Jacob King, was incarcerated at the time of removal. He relinquished his parental rights in September 2020 and is not a party to this appeal.

had exercised an emergency seventy-two-hour hold on the children after responding to a hotline call alleging abuse, neglect, and pornography exposure. DHS discovered that the children had been living with a sex offender (King's adult son, Brian Trowbridge) and that the home had no food, no hot water, and no air conditioning.[2] The affidavit noted the case worker's belief that the ICWA did not apply to the petition.

The circuit court granted emergency custody to DHS and later found probable cause to continue custody with DHS. In July 2020, the circuit court adjudicated the children dependent-neglected "based on parental unfitness due to the mother's drug abuse." The court reviewed the case in October 2020 and found that King had partially complied with the case plan, but in May 2021, the court changed the goal of the case to adoption following termination.

DHS petitioned to terminate King's parental rights in July 2021. From the record, it appears that in September 2021, King alleged for the first time that the children are eligible for membership in the Choctaw Nation through their biological mother. Consequently, DHS notified the Choctaw Nation and requested that it confirm the Indian status of the children. In response, the Choctaw Nation Department of Children and Family Services (CFS) clarified that PK did not qualify as an "Indian Child" under the federal ICWA; however, the child's maternal grandmother is a member of the Choctaw Nation of

---

[2]Trowbridge lived in the home with his six-year-old daughter, LT, and DHS received a report that Trowbridge had watched pornography with LT and that he held her hand and masturbated while watching pornography. LT was also removed from the home and is the subject of a separate dependency-neglect proceeding.

Oklahoma, and the biological mother is eligible for membership along with her children.[3] CFS advised the "parent or legal custodian" to complete the requisite membership paperwork for the child and stated that "[o]nce either the biological mother or the child is enrolled, the child will qualify as an 'Indian Child.'"

The circuit court convened a termination hearing on 16 November 2021. At the outset, the court and counsel discussed whether ICWA should apply. Shelee Long, DHS counsel, stated that it was her understanding that King had not enrolled the children and that the biological mother was not enrolled, so the children do not meet the definition of Indian children, and ICWA does not apply. Sara Goodrum, King's counsel, relayed information in an email from CFS to King that explained what King would need to do to enroll the children herself. It was Goodrum's understanding that those things had not been done.

The circuit court reasoned that based on CFS's response, it could make a finding on ICWA's applicability only as to PK. The court opined that it did not appear the hearing could move forward unless DHS "want[ed] to move forward as if all three children are Indian children[.]" Long indicated that DHS was prepared to do just that, but the court then questioned whether the case could move forward without the court making a specific finding that ICWA applies. Long stated that she had reviewed the statutes and found no requirement for a specific finding that ICWA applies. The court decided that because it

_____

[3]It is unclear why the response references only PK.

could not make a clear determination whether ICWA applies, it would impose the higher burden of proof required by ICWA.[4]

At the hearing, DHS offered the testimony of Mindy Tuck-Duty, who is a DHS supervisor, a member of the Cherokee Nation, and eligible for dual citizenship through the Choctaw Nation. She confirmed that she is knowledgeable about tribal customs pertaining to child rearing and practices and that she had previously been qualified as an expert witness for purposes of ICWA in other cases. The parties stipulated that Tuck-Duty is an expert in ICWA, the court designated her as one, and she testified to the following.

Tuck-Duty did not work on the King case but familiarized herself with the facts by reviewing DHS and court records. She opined that DHS had made active efforts to prevent the breakup of the Indian family; those active efforts include a preremoval consult, an appropriate case plan, and a case reassessment every three months in an effort to keep the progress moving forward. When asked whether returning custody to King is likely to result in serious emotional or physical damage to the children, Tuck-Duty said that there had "not been enough significant progress showing that she's . . . taken steps to alleviate the issues that brought the kids in care." She specifically noted that King's adult son still lived with

---

[4]We have some doubt that the ICWA applies here. An Indian child is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). The doubt arises because while the biological mother and her children seem *eligible* for membership, there is no evidence in the record that either she or the children have been properly *enrolled* as members of the Choctaw Nation. Regardless, the circuit court applied the ICWA standards out of an abundance of caution on an unclear record, the parties agreed to an expert, the expert testified, a decision was reached, and we will review that decision. But even if the ICWA should not have applied, we would affirm the termination without hesitation on this record.

4

her and that "bringing the children back into the home with the offender is detrimental to their not just physical health, but also, their mental health."

On cross-examination, Tuck-Duty reiterated that active efforts had been made to help King with her drug problems. Tuck-Duty explained that two different case workers had made referrals for King and that "[a]t some point, the mother has to be accountable for her actions as well[.]"

In its termination order, the circuit court found that DHS had proved beyond a reasonable doubt that statutory grounds for termination exist and that termination of parental rights is in the children's best interest. The court found that the children would be subjected to substantial risk of harm if returned to King's custody, specifically "serious physical and emotional harm . . . due to [King's] ongoing drug use, her continued instability, and her reunification with Joseph Lasiter Jr." (Lasiter is King's current husband and has previously been arrested for domestic assault with King as the victim.) And finally, the court found that DHS had made "active efforts to prevent the breakup of the Indian family. These reasonable and active efforts were unsuccessful. Thus, despite these efforts and services, the juveniles cannot and should not be returned to the parents." King has timely appealed the circuit court's order.

We review termination-of-parental-rights cases de novo. *Hune v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 543. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights. Ark. Code Ann. § 9-27-341 (Supp. 2021); *Kohlman v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 164, 544 S.W.3d 595. A best-interest finding under the Arkansas Juvenile Code must include consideration

5

of two factors: the likelihood of adoption and potential harm to the child if returned to the parents' custody. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability of a permanent home. *Wallace v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 481, 470 S.W.3d 286.

According to the ICWA, the party seeking to terminate parental rights shall satisfy the circuit court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful. 25 U.S.C. § 1912(d). Moreover, no termination of parental rights may be ordered in such a proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child. 25 U.S.C. § 1912(f). According to regulations issued by the Bureau of Indian Affairs, the State's "evidence must show a causal relationship between the particular conditions in the home and the likelihood that continued custody of the child will result in serious emotional or physical damage to the particular child who is the subject of the child-custody proceeding." 25 C.F.R. § 23.121(c) (2022). Without establishing this causal relationship, "evidence that shows only the existence of community or family . . . substance abuse or nonconforming social behavior" will not "by itself" prove beyond a reasonable doubt that the likelihood required by ICWA exists. 25 C.F.R. § 23.121(d).

Despite this heightened standard in the circuit court, this court's review is still de novo, and we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Holmes v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 495, 505 S.W.3d 730. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Sharks v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 435, 502 S.W.3d 569. In determining whether a finding is clearly erroneous, we give due deference to the circuit court's opportunity to judge the witnesses' credibility. *Bryant v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 375, 554 S.W.3d 295.

King first says that the circuit court erred in its "likelihood of harm" finding because Tuck–Duty failed to make a causal connection between the conditions in the home and the likelihood that each particular child will suffer serious emotional or physical harm if returned to her. Tuck–Duty's only familiarity with the case and the basis for her "expert" opinion came from reading the case file. King notes that the affidavit attached to the emergency petition did not note any sexual abuse or contact between the adult son and the "particular" children who are "the subject of the child-custody proceeding," and Tuck–Duty did not address how there was a causal relationship between Trowbridge and these children that would warrant termination of parental rights. King acknowledges that she did not raise this argument below but contends that it is a sufficiency-of-the-evidence issue that can be raised for the first time on appeal.

The record has ample evidence to support a finding beyond a reasonable doubt that continued custody with King was likely to result in serious emotional or physical damage

7

to the children. King failed to complete any part of the case plan, she continued to use illegal drugs, she did not consistently visit the children, and at the time of the termination hearing, she was still living with Trowbridge, a sex offender, and with a new husband, who had been charged with domestic abuse. As to King's argument that Tuck-Duty was required to specifically address each child in her testimony and make specific statements about how each child would be harmed if returned to the home, this court has previously addressed and rejected this argument.

In *Garris v. Arkansas Department of Human Services*, 2021 Ark. App. 118, 619 S.W.3d 67, Rosie Garris appealed the termination of her parental rights and argued that the circuit court had not complied with the ICWA. Tuck-Duty also served as the expert witness in *Garris*, and Garris argued that Tuck-Duty had not specifically testified that the child would likely suffer serious physical or emotional damage if returned to her custody. This court held,

> Rosie's argument misses the mark because it focuses on whether Tuck–Duty used the exact language of the statute. The question is not whether the ICWA expert witness used any magic words in describing the risk posed by returning the child to the parent but whether the court had sufficient evidence including, but not limited to, Tuck-Duty's testimony to support such a finding.

*Id*. at 12, 619 S.W.3d at 75–76. In the present case, Tuck-Duty testified that the children were likely to suffer serious physical or emotional damage if returned to King because she failed to comply with any portion of the case plan and continued to live with inappropriate individuals who are a threat to her children. She was not required to recite this information for each child individually. We hold that in light of the evidence presented and our previous

disposition of this argument in *Garris*, King's assertions on this point present no basis for reversal.

For her second point, King asserts that it was a conflict of interest for DHS to offer its own employee as the Indian expert to prove that termination was appropriate under ICWA. She argues that Tuck-Duty's role as an expert witness in this case was especially egregious because she "is a supervisor in the same county, and thus the same DHS office, where the case was being handled. This means that [she] had a close working relationship, and likely a personal camaraderie, with the staff assigned to this case—the same staff seeking the termination order."

This argument was also presented in *Garris*, and this court declined to address it because it was not preserved. The *Garris* court explained that challenges to the qualification of an ICWA expert witness are evidentiary issues that require preservation and not sufficiency-of-the-evidence issues that do not require preservation. This court held,

> Rosie also argues that Tuck-Duty should have been disqualified as an ICWA expert witness because she serves as a DCFS supervisor, which Rosie claims is a conflict of interest. . . . As with Rosie's previous argument, to the extent that she frames this issue as an evidentiary challenge to Tuck-Duty's qualification as an expert witness, her argument has not been preserved for our review because she failed to raise it below. To the extent that Rosie is challenging Tuck-Duty's credibility due to her employment with DCFS, we must again give deference to the opportunity of the circuit court to judge the credibility of witnesses.

*Garris*, 2021 Ark. App. 118, at 11, 619 S.W.3d at 75. While King asks this court to reconsider our holding in *Garris*, we decline to do so. First, the argument is not preserved; and second, King stipulated to Tuck-Duty's status as an ICWA expert witness below.

9

For her final point, King argues that the circuit court's failure to comply with the ICWA has disrupted the goal of permanency for the children and rendered termination not in their best interest. Again, this contention was addressed and rejected in *Garris*:

> Rosie also contends that, based on the errors alleged above, DHS failed to meet the statutory requirements for termination pursuant to the ICWA and that, therefore, CG's permanency is at risk because she cannot be adopted. In support of this argument, Rosie cites several cases from other jurisdictions in which an adoption proceeding following a termination order governed by the ICWA was disrupted because the prior termination proceeding was found to have not complied with the ICWA. Rosie's argument fails because she asserts no additional allegations of reversible error than those already addressed and rejected above. Because we have found no reversible error as to any of Rosie's previous points on appeal, this argument lacks merit.

*Garris*, 2021 Ark. App. 118, at 11, 619 S.W.3d at 75. Having found no reversible error in the arguments on points one and two, and given our precedent in *Garris*, we find no reversible error on this point either.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.